**LAW OFFICE OF DALE K. GALIPO**
DALE K. GALIPO, SBN 144074
Hang D. Le, Esq., SBN 293450
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Telephone:  (818) 347-3333
Facsimile:   (818) 347-4118

**LAW OFFICE OF STEWART KATZ**
STEWART KATZ, State Bar #127425
555 University Avenue, Suite 270
Sacramento, California 95825
Telephone: (916) 444-5678

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.A.M., individually and as successor in interest to AUGUSTINE MORALES, Deceased, by and through WENDY GRIJALVA, as Guardian ad Litem; A.B.M., individually and as successor in interest to AUGUSTINE MORALES, Deceased, by and through WENDY GRIJALVA, as Guardian ad Litem ; JOSEPH MORALES, WENDY GRIJALVA,<br><br>                    Plaintiffs,<br>          vs.<br><br>CITY OF SACRAMENTO; JEREMIAH JARVIS<br>                    Defendants<br>_____/ | **COMPLAINT FOR VIOLATIONS OF FEDERAL CIVIL RIGHTS AND STATE LAW**<br><br>**[42 U.S.C. § 1983 and State Law Claims]**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs complain and allege as follows:

### I. INTRODUCTION

1.       Augustine Morales was fatally shot without warning and from the back by Sacramento Police Department Sergeant Jeremiah Jarvis on November 14, 2020. Ironically,

the shooting of Augustine Morales occurred after gunfire broke out at a putatively anti-gun boxing event entitled, "Gunz Down, Gloves Up" while Morales was holding an unloaded, legal handgun, which he had not fired any of the rounds, and had not pointed the gun in anyone's direction.

2. This is a civil rights action brought by his father, his minor children, and the mother of his children and life-partner.

3. Through this action, plaintiffs seek to recover, to the limited extent that financial compensation can, for the losses suffered as a result of defendants' actions.

4. The timing of this filing is necessitated by the applicable statute of limitations and plaintiffs have only limited information regarding the incident and are still awaiting the release of police and coroner reports that should lead to a clearer picture of the events of November 14, 2020.

**II. JURISDICTION AND VENUE**

5. This Complaint seeks damages and attorney's fees pursuant to Title 42 U.S.C. sections 1983 and 1988, for the violation of plaintiffs' civil rights. Jurisdiction is founded upon Title 28 U.S.C. sections 1331 and 1343. This court has supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. Section 1367.

6. All of the conduct described herein occurred within the City of Sacramento, California. Venue lies in the Eastern District of California pursuant to 28 U.S.C. section 1391(b)(2).

**III. EXHAUSTION OF GOVERNMENT
TORT CLAIM PROCEDURES**

7. Plaintiffs A.A.M., Wendy Grijalva and Joseph (John) Morales filed timely government tort claims with the City of Sacramento on March 3, 2021, as a precondition to the state law claims alleged in this action. Plaintiff A.B.M. filed a timely government tort claim, with the City of Sacramento on August 24, 2021, as a precondition to the state law claims alleged in this action.

1     8.     On March 9, 2021, the City of Sacramento rejected the claims of A.A.M.,

2   Wendy Grijalva and Joseph (John) Morales.  On August 31, 2021, the City of Sacramento

3   rejected the claim of A.B.M.

4                                    **IV. PARTIES**

5     9.     Decedent Augustine Morales (hereinafter "Morales") was a resident of

6   Sacramento County and a citizen of the United States.

7     10.    Plaintiff A.A.M. is a surviving son and successor in interest to Morales. He

8   is a resident of Sacramento County and is a citizen of the United States. He proceeds in this

9   action through Wendy Grijalva as Guardian ad Litem. He is now 10 years old. A

10  declaration by his Guardian ad Litem, Wendy Grijalva, in support of bringing this action as

11  decedent's successor in interest is attached hereto.

12    11.    Plaintiff A.B.M. is a surviving son and successor in interest to Morales. He

13  is a resident of Sacramento County and is a citizen of the United States. He proceeds in this

14  action through Wendy Grijalva as Guardian ad Litem. He is less than a year old. A

15  declaration by his Guardian ad Litem, Wendy Grijalva, in support of bringing this action as

16  decedent's successor in interest is attached hereto.

17    12.    Plaintiff Joseph (John) Morales (hereinafter "John") is the natural father of

18  Decedent.  He is a resident of Sacramento County and is a citizen of the United States.

19    13.    Plaintiff Wendy Grijalva is the mother A.B.M. and A.A.M. Plaintiff was the

20  life partner of Morales for over 15 years prior to his untimely death.

21    14.    Defendant Jeremiah Jarvis (hereinafter "Sgt. Jarvis") is and was a Sergeant

22  employed by the City of Sacramento. Sacramento Police Department as a Sergeant at the

23  time he shot and killed Augustine Morales. At all relevant times he was acting within the

24  course and scope of that employment and under color of state law. Defendant Jarvis is

25  being sued in his individual capacity.

26    15.    Defendant City of Sacramento is a political subdivision of the State of

27  California, created and existing by virtue of the laws of the State of California.

28

Morales-Complaint                                                                    3

16.     Plaintiffs A.B.M. and A.A.M. are bringing this action pursuant to California Code of Civil Procedure §§377.20 et seq. and 377.60 which provide for survival and wrongful death actions.  Plaintiffs A.B.M. and A.A.M. are also bringing claims pursuant 42 U.S.C. §§1983 and 1988 as successors in interest on behalf of their deceased father, for violations of the United States Constitution and federal civil rights law.

17.     The declarations required under California Code of Civil Procedure Section 377.32 for persons bringing an action as a decedent's successor in interest is attached as "Attachment 1" to this Complaint.

18.     Plaintiffs may seek leave to amend to name additional defendants in the event that information subsequently obtained, such as through discovery, demonstrates that additional individuals were involved in the shooting, ratification of the shooting or were responsible for the inadequate supervision or training of defendants currently named.

## V. THE INCIDENT

19.     On Saturday evening of November 14, 2020, there was what was billed as a community anti-gun violence event, "Gunz Down, Gloves Up: Northside Edition."   It featured an amateur boxing card but also advertised music and food.

20.     The event was held in a portion of one of the several metal-sided, industrial buildings, accessible from Juliesse Avenue in North Sacramento. The space had a large rollup door.

21.      The space was reportedly rented specifically to stage this event which was ticketed and appears to have been a for-profit enterprise. The event was neither licensed as required by the California State Athletic Commission nor were any necessary permits obtained from the City of Sacramento. This sort of illegal boxing event is referred to as a "smoker".

22.     Despite the inherent illegality of the event and the scoffing of applicable Covid-19 rules then in place, the Sacramento Police Department allowed the event to go on.

23.     Morales was one of the 400-600 people who attended and were sardined within that space.

24.     At around 8:00 p.m. a disturbance broke out. While Morales was outside the building, gunshots erupted from inside the building. Multiple guns may have been fired.

25.     Morales approached the building holding his registered firearm. His intentions were unknown. Upon information and belief, Morales was intoxicated.

26.     Sacramento Police Sgt. Jarvis had been monitoring the event from a nearby location a short distance away but without a clear line of vision to the inside of the venue.

27.     After hearing a number of shots being fired in quick succession, Sgt. Jarvis jogged towards the space where the event was taking place with his firearm drawn. The rounds sounded as though they had been fired from the same weapon.

28.     Sgt. Jarvis caught a glimpse of a gun in Morales' hands. Upon information and belief, Morales was not pointing the gun at anyone. Sgt. Jarvis did not, (and could not) have seen any indication that Morales had fired the rounds he had heard.

29.     Without giving or attempting to give even a single warning or command, Jarvis unloaded over dozen rounds from the large capacity magazine of his personal Sig Sauer semi-automatic pistol at Morales from only a few feet way. He fired as he approached Morales from behind and kept firing as he moved in a circular path to left and around the stationary Morales.  Morales fell to the ground well before the Sgt. Jarvis stopped shooting.

30.     Only after Morales was on the ground, fatally wounded and after the final shot did Sgt. Jarvis give any commands to Morales. He told him to "drop the gun" which Morales promptly did by sliding it away from his body while he plaintively told Jarvis that "I didn't shoot nobody."

31.     Morales **did not** and **could not** have fired the shots that Jarvis heard. Morales could not have shot Sgt. Jarvis or anyone else at the time that Sgt. Jarvis unleashed the fatal fuselage. First of all, there was no magazine in Morales' registered Smith & Wesson 9 mm pistol. (The magazine was found near his car 75-90 feet away). Secondly,

1    the weapon had a magazine safety which prevented it from being able to fire a chambered

2    round without the magazine in the pistol. Thirdly, upon information and belief, all of the

3    shell casings found at the scene were examined and that none of those were fired from

4    Morales' handgun. Fourthly, upon information and belief, a gunshot residue test was taken

5    of Morales and the test confirmed that he had not fired a weapon.

6         32.     Had Sgt. Jarvis given any commands to Morales prior to his shooting him, it

7    is a near certainty that Morales would be still be alive. Even after Morales was shot, upon

8    recognizing it had been a police officer who had shot him, he immediately complied with

9    Sgt. Jarvis' directions, and truthfully professed his innocence before losing consciousness

10   at the scene.

11        33.     Morales appears to have been struck by 10 or more of the bullets. At least

12   three of the wounds were to his back.  Plaintiffs have not yet been able to obtain the

13   autopsy which should contain more precise information regarding his injuries.

14        34.     Morales was transported to UC Davis Medical Center where he was

15   pronounced dead.

16        35.     Sgt.Jarvis' body camera footage as well as the surveillance camera footage

17   from nearby buildings, which have been released, support this narrative. Upon information

18   and belief, many of those who attended the event have been less than fully cooperative with

19   law enforcement, which has delayed the completion of the police reports.

20        36.     At the time of his death, Morales was 39 years old. He was a native of

21   Sacramento. His only criminal record was  for a misdemeanor DUI approximately 18 years

22   earlier. His firearm was registered and he was legally able to possess a gun.

23        37.     For the last five years of his life, Morales was working on developing a

24   small clothing company he had started called, "80's Babez." He managed and was involved

25   in all phases of the business including marketing, design and distribution. He had

26   consignment agreements at a number of stores and occasionally set up pop-up stores as

27   well as other direct sales situations. He contributed his earnings to the family finances.

28

38.     Morales had lived continuously with Wendy Grijalva since 2005. Though not formally married, they acted as a married couple would. Morales shared in both home maintenance, cleaning and food preparation. The lease where they lived was in both of their names.  They both focused their time and energy to being loving and devoted parents.

39.     Because Morales was self-employed with flexible, if long, hours and Grijalva worked at a medical billing job (and has for last dozen years) with conventional workday hours, the bulk of the child-rearing responsibilities for A.A.M. were assumed by Morales. He was essentially a stay-at-home dad, and was the parent who typically helped A.A.M. with homework, took A.A.M. to medical appointments and interacted, when necessary, with A.A.M.'s school.  Morales' willingness to help with childcare also enabled Grijalva to take several college classes.

40.     Morales' son, A.A.M., was 10 years old when his father died. A.A.M. referred to Morales as his "best friend."

41.     Morales' younger son, A.B.M. never got to meet his father. A.B.M. was born after Morales' death.

42.     Wendy Grijalva counted on Morales in his role as principal childcare provider, and even more so due to then impending the birth of their second son.  That she is no longer able to work remotely due to eased Covid-19 restrictions has been a painful reminder of the day-to-day difficulties she now faces without Morales' assistance even apart from their mutual love and emotional support.

43.     Morales had a close relationship with his father, John. For a number of years when Morales was young, John had sole custody of him.  Morales frequently saw John, who also lives in Sacramento.  They would typically speak several times a week.  John took particular pride in following Morales' efforts to build his business, as well as sharing thoughts on how to be a better father.  Morales and Grijalva frequently vacationed with John and his wife.

//

Morales-Complaint                                                                 7

# VI. CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF
**Unreasonable Seizure/ Excessive Force**
**(42 U.S.C. section 1983)**

*Plaintiffs A.A.M. and A.B.M. against Defendant Jeremiah Jarvis*

44.     Plaintiffs A.A.M. and A.B.M. re-allege and incorporate by reference paragraphs 1 through 43, as though fully set forth herein.

45.     The actions of Defendant Jarvis alleged herein, including but not limited to using deadly force against Morales, were unreasonable and excessive uses of force. Defendant Jarvis's conduct violated Morales' rights protected by the Fourth Amendment of the United States Constitution.

46.     Defendant Sgt. Jarvis is also liable on the basis that he integrally participated and/or failed to intervene in the violation of Morales' right to be free from excessive force.

47.     As a direct and proximate result of said acts and/or omissions by Defendant Sgt. Jarvis, Morales suffered injuries and damages as alleged herein and to which his successor in interest is entitled to recover survival damages, costs and attorneys' fees.

48.     The aforementioned acts and/or omissions of Defendant Sgt. Jarvis were willful, wanton, malicious and done with conscious or reckless disregard for the rights and safety of the decedent, thereby entitling plaintiffs to an award of exemplary and punitive damages according to proof.

49.     Plaintiffs A.A.M and A.B.M. bring this claim as successors in interest to Morales and seek survival damages, including damages for Morales's pre-death pain and suffering, loss of enjoyment of life, and loss of life, punitive damages, costs and interest, and attorneys' fees under this claim.

## SECOND CLAIM FOR RELIEF
**"Bane Act"**
**(California Civil Code Section 52.1, et seq.)**

*Plaintiffs A.A.M. and A.B.M. against Defendants Jeremiah Jarvis and City of Sacramento*

50.      Plaintiffs A.A.M. and A.B.M. re-allege and incorporate by reference paragraphs 1 through 49, as though fully set forth herein.

51.      California Civil Code, Section 52.1 (the Bane Act), prohibits any person from using violent acts or threatening to commit violent acts in retaliation against another person for exercising that person's constitutional rights.

52.      On information and belief, Defendant Sgt. Jarvis, while working for the City of Sacramento and acting within the course and scope of his duties, intentionally committed and attempted to commit acts of violence against Morales or acted in reckless disregard of decedent's civil rights, including by shooting him without justification or excuse.

53.      When Defendant Sgt. Jarvis shot Morales, he interfered with Morales's civil rights to be free from unreasonable searches and seizures, to due process, to equal protection of the laws, to be free from state actions that shock the conscience, and to life, liberty, and property.

54.      On information and belief, Defendant Sgt. Jarvis intentionally and spitefully committed the above acts to discourage Morales from exercising his civil rights, to retaliate against him for invoking such rights, to prevent him from exercising such rights, or acted in reckless disregard of his civil rights, which he was fully entitled to enjoy.

55.      On information and belief, Morales reasonably believed and understood that the violent acts committed by Defendant Sgt. Jarvis were intended to discourage him from exercising the above civil rights, to retaliate against him, or invoking such rights, or to prevent him from exercising such rights.

56.       Defendant Sgt. Jarvis successfully interfered with the above civil rights of Morales.

57.      The conduct of Defendant Sgt. Jarvis was a substantial factor in causing Morales's harms, losses, injuries, and damages.

58.      The City of Sacramento is vicariously liable for the wrongful acts of Defendant Jarvis pursuant to section 815.2(a) of the California Government Code, which

provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

59.     The conduct of Defendant Sgt. Jarvis was malicious, wanton, oppressive, and accomplished with a conscious disregard for Morales' rights, justifying an award of exemplary and punitive damages as to Defendant Sgt. Jarvis.

60.     Plaintiffs A.A.M. and A.B.M. bring this claim as successors in interest to Morales and seek compensatory damages under this claim. Plaintiffs A.A.M. and A.B.M. also seek treble damages, attorney's fees, and costs under this claim.

## THIRD CLAIM FOR RELIEF
### Negligence/Wrongful Death
### (California State Common Law)
*Plaintiffs A.A.M., and A.B.M., against Defendants Jeremiah Jarvis and City of Sacramento*

61.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 60, as though fully set forth herein.

62.     Police officers, including Defendant Sgt. Jarvis, have a duty to use reasonable care to prevent harm or injury to others. This duty includes using appropriate tactics, giving appropriate commands, giving warnings, and not using any force unless necessary, using less than lethal options, and only using deadly force as a last resort.

63.      Defendant Sgt. Jarvis breached this duty of care.  Upon information and belief, the actions and inactions of Defendants Sgt. Jarvis and City of Sacramento were negligent and reckless, including but not limited to:

>          a)      the failure to properly and adequately assess the need to detain, arrest, and use force or deadly force against Morales;

>          (b)      the negligent tactics and handling of the situation with Morales, including pre-shooting negligence;

>          (c)      the negligent seizure and use of force, including deadly force, against Morales;

>          (d)      the failure to provide prompt medical care to Morales;

Morales-Complaint                                                                                      10

(g)     the negligent handling of evidence and witnesses; and

(h)     the negligent communication of information during the incident.

64.     As a direct and proximate result of Defendant Sgt. Jarvis's conduct as alleged above, and other undiscovered negligent conduct, Morales ultimately died.  Also, as a direct and proximate result of Defendant Sgt. Jarvis's conduct as alleged above, Plaintiffs suffered emotional distress and mental anguish. Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of Morales, and will continue to be so deprived for the remainder of their natural lives.

65.     The City of Sacramento is vicariously liable for the wrongful acts of Defendant Jarvis pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

66.     The conduct of Defendant Sgt. Jarvis was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiffs and Morales, entitling Plaintiffs to an award of exemplary and punitive damages as to Defendant Sgt. Jarvis.

67.     Plaintiffs A.A.M. and A.B.M. bring this claim individually and as successors in interest to the DECEDENT, and seek survival damages and wrongful death damages for the violation of their rights and Morales's rights.

68.     Plaintiff John brings this claim individually and seeks wrongful death damages for the violation of his rights.

**FOURTH CLAIM FOR RELIEF**
**Assault and Battery / Wrongful Death**
**(California State Common Law)**
*Plaintiffs A.A.M., A.B.M., and Joseph against Defendants Jeremiah Jarvis and City of Sacramento*

69.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 68, as though fully set forth herein.

70.     Defendant Sgt. Jarvis while working as a police officer for the City of Sacramento, and acting within the course and scope of his duties, intentionally shot Morales and used unreasonable and excessive force against him.  As a result of the actions of Defendant Sgt. Jarvis, Morales ultimately died from his injuries. Defendant Sgt. Jarvis had no legal justification for using force against Morales, and his use of force while carrying out his duties as a police officer was an unreasonable and non-privileged use of force.

71.     As a direct and proximate result of the conduct of Defendant Sgt. Jarvis as alleged above, Morales sustained injuries and died from his injuries and also lost his earning capacity.

72.     The City of Sacramento is vicariously liable for the wrongful acts of Defendant Sgt. Jarvis pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

73.     The conduct of Defendant Sgt. Jarvis was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiffs and Morales, entitling Plaintiffs to an award of exemplary and punitive damages as to Defendant Sgt. Jarvis.

74.     Plaintiffs A.A.M and A.B.M. bring this claim individually and as a successors in interest to the Morales, and seek survival damages and wrongful death damages for the violation of their rights and Morales's rights.

75.      Plaintiff John brings this claim individually and seeks wrongful death damages for the violation of his rights.

### FIFTH CLAIM FOR RELIEF
**Municipal Liability (*Monell*)**
**(42 U.S.C. § 1983)**
*All Plaintiffs against Defendant City of Sacramento*

76.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 75, as though fully set forth herein.

77.     Defendant Sgt.  Jarvis acted under color of law;

78.     Defendant Sgt. Jarvis acted pursuant to an expressly adopted official policy or a longstanding practice or custom of the Defendant City of Sacramento.

79.     On information and belief, Defendant Sgt. Jarvis was not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with Morales's death.

80.     City of Sacramento along with City policymakers and supervisors, maintained, inter alia, the following unconstitutional customs, practices, and policies:

(a)     Using excessive force, including excessive deadly force;

(b)     Providing inadequate training regarding the use of force, including use of deadly force;

(c)     Employing and retaining as police officer individuals such as Defendant Sgt. Jarvis, who Defendant City of Sacramento at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive force;

(d)     Inadequately supervising, training, controlling, assigning, and disciplining City of Sacramento police officers, and other personnel, including Defendant Sgt. Jarvis, who Defendant City of Sacramento knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

(e)     Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by City of Sacramento police officers, including Defendant Sgt. Jarvis;

(f)     Failing to adequately discipline City of Sacramento police officers, including Defendant Sgt. Jarvis, for the above-referenced categories

of misconduct, including "slaps on the wrist," discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct;

(g) Announcing that unjustified shootings are "within policy," including shootings that were later determined in court to be unconstitutional;

(h) Even where shootings are determined in court to be unconstitutional, refusing to discipline, terminate, or retrain the deputies involved;

(i) Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of police shootings, including by failing to discipline, retrain, investigate, terminate, and recommend deputies for criminal prosecution who participate in unjustified shootings.

(j) Failing to properly train deputies to use nonlethal force and to maintain their equipment concerning nonlethal force.

81. By reason of the aforementioned acts and omissions, Plaintiffs have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of Morales. The aforementioned acts and omissions also caused Morales's pain and suffering, loss of enjoyment of life, and death.

82. Defendants Sgt. Jarvis and City of Sacramento, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above, these defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Morales, Plaintiffs, and other individuals similarly situated.

83. By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, Defendant Sgt. Jarvis acted with intentional, reckless, and callous

disregard for the life of Morales and for Morales's and Plaintiffs' constitutional rights. Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendant Jarvis was affirmatively linked to and were a significantly influential force behind the injuries of Morales and Plaintiffs, including but not limited to Defendant Sgt. Jarvis's use of excessive force, including deadly force, against Morales.

84.     Accordingly, Defendant Sgt. Jarvis is liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

85.     Plaintiffs A.A.M and A.B.M. bring this claim individually and as a successors-in-interest to the Morales, and seek survival damages and wrongful death damages for the violation of their rights and Morales's rights.  Plaintiffs Grijalva and John bring this claim individually and seek wrongful death damages for the violatoin of their rights. Plaintiffs also seek attorney's fees under this claim.

## SIXTH CLAIM FOR RELIEF
### Substantive Due Process – Loss of Family Relationships
### (42 U.S.C. § 1983)
*All Plaintiffs against Defendant Jeremiah Jarvis*

86.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 85, as though fully set forth herein.

87.     Plaintiffs A.A.M. and A.B.M., and each of them, had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in the minor plaintiffs' familial relationship with their father, Morales.

88.     Plaintiff Grijalva had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in Plaintiff Grijalva's familial relationship with her life partner, Morales.

89.     Plaintiff John had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive him of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in Plaintiff John's familial relationship with his son, Morales.

90.     Morales himself had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive his of life, liberty, or property in such a manner as to shock the conscience.

91.     The aforementioned actions of Defendant Sgt. Jarvis along with other undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of Plaintiffs and Decedent, and with purpose to harm unrelated to any legitimate law enforcement objective.

92.     As a direct and proximate result of these actions, Morales experienced pain and suffering and eventually died. Defendant Sgt. Jarvis thus violated the substantive due process rights of Plaintiffs and Morales to be free from unwarranted interference with their familial relationship with each other.

93.     As a direct and proximate cause of the acts of Defendant Sgt. Jarvis, Plaintiffs suffered emotional distress, mental anguish, and pain.  Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Morales, and will continue to be so deprived for the remainder of their natural lives.

94.     The conduct of Defendant Sgt. Jarvis was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Morales and Plaintiffs and therefore warrants the imposition of exemplary and punitive damages as to Defendant Sgt. Jarvis.

95.     Plaintiffs A.A.M., A.B.M., Grijalva, and John bring this claim individually and seek wrongful death damages for the violation of their rights and Morales's rights. Plaintiffs also seek attorney's fees under this claim.

1
2
3

## VII. PRAYER FOR RELIEF

4          WHEREFORE, Plaintiffs A.A.M, A.B.M., Wendy Grijalva, and Joseph

5   "John" Morales request entry of judgment in their favor and against Defendants City of

6   Sacramento and Jeremiah Jarvis as follows:

7          A.      For compensatory damages in whatever other amount may be proven

8                  at trial, including both survival damages and wrongful death

9                  damages under federal law;

10         B.      For funeral and burial expenses;

11         C.      For punitive damages against the individual defendants in an amount

12                 to be proven at trial;

13         D.      For statutory damages;

14         E.      For interest;

15         F.      For reasonable attorneys' fees, including litigation expenses;

16         G.      For costs of suit; and

17         H.      For such further other relief as the Court may deem just, proper, and

18                 appropriate.

19

20  Dated: September 9, 2021                          Respectfully submitted,

21

22                                                    /s/ Stewart Katz
                                                      STEWART KATZ
23                                                    DALE K. GALIPO
                                                      HANG D. LE
24

25                                                    Attorneys for Plaintiffs

26

27

28  //

1

## DEMAND FOR TRIAL BY JURY

2

3
        Plaintiffs hereby demand trial by jury.

4

5
Dated: September 9, 2021                              /s/ Stewart Katz
                                                     STEWART KATZ
6                                                    DALE K. GALIPO
                                                     HANG D. LE
7                                                    Attorneys for Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# ATTACHMENT 1

1

**LAW OFFICE OF DALE K. GALIPO**
DALE K. GALIPO, SBN 144074
2
Hang D. Le, Esq., SBN 293450
21800 Burbank Blvd., Suite 310
3
Woodland Hills, CA 91367
Telephone:  (818) 347-3333
4
Facsimile:   (818) 347-4118

5

**LAW OFFICE OF STEWART KATZ**
6
STEWART KATZ, State Bar #127425
7
555 University Avenue, Suite 270
Sacramento, California 95825
8
Telephone: (916) 444-5678

9
Attorneys for all Plaintiffs
10

11                     **UNITED STATES DISTRICT COURT**

12                     **EASTERN DISTRICT OF CALIFORNIA**

13

14   **IN RE: AUGUSTINE MORALES**          **DECLARATION BY PERSONS**
                                            **BRINGING THIS ACTION AS**
15                                          **DECEDENT'S SUCCESSORS IN**
                                            **INTEREST**
16

17          Pursuant to California Code of Civil Procedure section 377.32, Plaintiffs submit this

18   declaration in support of bringing this action as decedent's successors in interest.

19          I, Wendy Grijalva, declare as follows:

20

21          1.      The claims in this action arise out of the death of the decedent, Augustine

22   Morales.

23          2.      Augustine Morales died on November 14, 2020, in Sacramento County,

24   California.

25          3.      No proceeding is now pending in California for administration of the

26   decedent's estate.

27          4.      There was no administration of the decedent's estate.

28

5.     Declarant, Wendy Grijalva, is the mother (and guardian seeking appointment as Guardian ad Litem) of decedent's minor children, A.A.M. and A.B.M. and the children are the next of kin.  A.A.M. and AB.M.  are   successors in interest as defined in section 377.11 of the California Code of Civil Procedure and succeed to the decedent's interest in this action.

6.     No other person has a superior right to commence this action or proceeding or to be substituted for Augustine Morales in the pending action or proceeding.

7.     A certified copy of Augustine Morales' death certificate is forthcoming.

I declare under penalty of perjury that the foregoing is true and correct of my own knowledge, and if called to do so, I could and would competently testify to the matters set forth herein. Executed this 9th day of September, 2021, at Sacramento, California.

/s/ Wendy Grijalva
Wendy Grijalva, Declarant

I declare under penalty of perjury that the foregoing is true and correct of my own knowledge, and if called to do so, I could and would competently testify to the matters set forth herein. Executed this 9th day of September, 2021, at Sacramento, California

/s/ Wendy Grijalva
A.A.M., by and through Wendy
Grijalva, as Guardian ad Litem

I declare under penalty of perjury that the foregoing is true and correct of my own knowledge, and if called to do so, I could and would competently testify to the matters set forth herein. Executed this 9th day of September, 2021, at Sacramento, California

/s/ Wendy Grijalva
A.B.M.., by and through
Wendy Grijalva,
as Guardian ad Litem